UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATE OF AMERICA,

                Plaintiff,

        -against-

AVRAHAM EISENBERG,

                Defendant.

Case No.: 23-CR-010 (AS)

## **DEFENDANT AVRAHAM EISENBERG'S PROPOSED JURY INSTRUCTIONS**

Brian E. Klein
Ashley E. Martabano
Waymaker LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
(424) 652-7800

Sanford N. Talkin
Noam B. Greenspan
Talkin, Muccigrosso & Roberts, LLP
40 Exchange Place, 18th Floor
New York, New York 10005
(212) 482-0007

*Attorneys for Avraham Eisenberg*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

1.  Function of Court and Role of Jury ................................................................... 2

2.  Statements of Court and Counsel Not Evidence ................................................ 4

3.  Government Treated Like Any Other Party ....................................................... 6

4.  Presumption of Innocence and Burden of Proof ............................................... 7

5.  Reasonable Doubt .............................................................................................. 8

6.  Number of Witnesses ......................................................................................... 9

7.  Direct and Circumstantial Evidence ............................................................... 10

8.  Inferences ........................................................................................................ 12

9.  Stipulations (If applicable) .............................................................................. 13

10. Limiting Instructions (if applicable) ............................................................... 14

11. No Outside Communications, Outside Research, or Internet Research ........... 15

12. Improper Considerations ................................................................................. 16

13. The Indictment ................................................................................................. 17

14. Summary of the Indictment ............................................................................. 18

15. Theory of the Defense ...................................................................................... 19

16. Count One – Commodities Fraud .................................................................... 20

17. Count One – Commodities Fraud: First Element: Fraudulent Act ................. 22

18. Count One – Commodities Fraud: Second Element: Materiality .................... 25

19. Count One – Commodities Fraud: Third Element: State of Mind ................... 27

20. Count One – Commodities Fraud: Fourth Element: In Connection With A Swap or Contract of Sale of A Commodity ...................................................................... 29

21. Count Two – Commodities Manipulation – the Nature and Elements of the Offense ..... 32

22. Count Two – Commodities Manipulation: Element One: Ability to Alter Price of a Swap 33

23. Count Two – Commodities Manipulation: Elements Two and Three: Artificiality ......... 34

24. Count Two – Commodities Manipulation: Element Four: Specific Intent ...................... 36

25. Count Three – Wire Fraud ............................................................................... 37

26. Count Three – Wire Fraud: Elements One Through Three: Scheme or Artifice to Defraud, Materiality, State of Mind ......................................................................................... 39

27. Count Three – Wire Fraud: Elements Four: Use of the Wires ......................... 40

28. Relationship to the United States .................................................................... 42

29. Venue ............................................................................................................... 44

30. Variance in Dates and Times .......................................................................... 45

31.     Multiple Counts ....................................................................................................... 46

32.     Credibility of Witnesses ....................................................................................... 47

33.     Particular Investigative Techniques Not Requires ............................................... 51

34.     Charts and Summaries (if applicable) ................................................................... 52

35.     Testimony of Law Enforcement Officers .............................................................. 53

36.     Testimony of Experts ............................................................................................ 54

37.     Stipulations (if applicable) .................................................................................... 55

38.     Preparation of Witnesses ....................................................................................... 56

39.     Evidence Obtained From Searches ........................................................................ 57

40.     Defendant's Testimony .......................................................................................... 58

41.     Defendant's Right Not to Testify .......................................................................... 59

CONCLUSION ..................................................................................................................... 60

## PRELIMINARY STATEMENT

Defendant Avraham Eisenberg respectfully submits the following proposed jury instructions pursuant to Rule 30 of the Federal Rules of Criminal Procedure. Authority for each proposed instruction is noted in footnotes, either immediately following particular portions of the instruction for sources that relate to particular portions of an instruction or at the end of the instruction for sources for an entire instruction. Mr. Eisenberg reserves the right to object to the government's proposed instructions, which have not yet been filed, and the right to modify his proposed instructions and/or seek additional ones if, for example, the evidence at trial necessitates modification.

## 1. <u>Function of Court and Role of Jury</u>

You have now heard all of the evidence in the case as well as the final arguments of the parties.

My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you. If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should considermy instructions as a whole when you retire to deliberate in the jury room. And you should know that you're going to be able to take a copy of these instructions into the jury room.

Your final role is to pass upon and decide the fact issues that are in the case. You, the members of the jury, are the sole and exclusive judges of the facts. You weigh the evidence or lack of evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony, and you draw whatever reasonable inferences you decide to draw from the facts as you have determined them. I will later discuss with you how to pass upon the credibility—or believability—of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence. The evidence before you consists of the answers given by witnesses—the testimony they gave, as you recall it—and the exhibits that were received in evidence. The evidence does not

include questions. Only the answers are evidence. But you may not consider any answer that I directed you to disregard.

You may also consider the stipulations of the parties as evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the guilt of Mr. Eisenberg has been proven beyond a reasonable doubt.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witness. I stress to you that the court has no opinion as to the verdict you should render in this case.

As to the facts you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice as to any party.[1]

---

[1] Adapted from charge of Hon. Lewis J. Liman in *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

**2. <u>Statements of Court and Counsel Not Evidence</u>**

As I said, in determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. If your recollection of the facts differs fromthe statements made in opening or closing, you should rely on your recollection. If a statement was made during an opening or summation and you find that there is no evidence to support the statement, you should disregard the statement.

A question put to a witness is not evidence. It is only the answer coupled with question that is evidence. Nor is anything I may have said during the trial or may say during these instructions with respect to a fact to be taken in substitution for your own independent recollection. What I say is not evidence.

Relatedly, do not conclude from any of my questions or any of my rulings on objections or anything else I have done during this trial that I have any view as to the evidence, credibility of the witnesses or how you should decide the case.

In addition, remember that it is the duty of a party to object when the other side offers testimony or other evidence that the party believes is not properly admissible. Therefore, you should draw no inference from the fact that there was an objection to any evidence. An objection is not evidence. Nor should you draw any inference from the fact that I sustained or overruled an objection. Simply because I have permitted certain evidence to be introduced does not mean that I have decided on its importance or significance. That is for you to decide. The personalities and the conduct of counsel are not in any way at issue. If, from their conduct at this trial, you formed opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you approved or disapproved of their behavior, those opinions should not

enter into your deliberations. The only issue is whether the Government has proven each of the elements of the charged offenses beyond a reasonable doubt.[2]

---

[2] *Id.*

### 3. <u>Government Treated Like Any Other Party</u>

The fact that the prosecution is brought in the name of the United States of America entitles the Government to no greater consideration than that accorded to any other party to a litigation. By the same token, it is entitled to no less consideration. All parties, whether Government or individuals, stand as equals at the bar of justice.[3]

---

[3] *Id.*

## 4. __Presumption of Innocence and Burden of Proof__

Now, I will instruct you on the presumption of innocence and the Government's burden of proof in this case. Mr. Eisenberg has pleaded not guilty.  By doing so, he denies the charges in the Indictment.  Thus, the Government has the burden of proving the charges against Mr. Eisenberg beyond a reasonable doubt. Mr. Eisenberg is presumed innocent. A defendant does not have to prove his innocence. This presumption of innocence was in Mr. Eisenberg's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

The Government has the burden of proof in this case. The presumption of innocence is removed as to Mr. Eisenberg if *and only if* you, as members of the jury, are satisfied that the Government has sustained its burden of proving the guilt of him beyond a reasonable doubt.[4]

.

---

[4] *Id.*

**5.** <u>**Reasonable Doubt**</u>

The Government has the burden of proving Mr. Eisenberg guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the Government's proof must be more powerful than that. It must be beyond a reasonable doubt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of Mr. Eisenberg's guilt. A reasonable doubt is one that would cause a reasonable person to hesitate to act in a matter of importance in his or her personal life. Proof beyond a reasonable doubt must, therefore, be proof of a convincing character that a reasonable person would not hesitate to rely upon in making an important decision.

There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, after fair and impartial consideration of the evidence or lack thereof, you are firmly convinced that Mr. Eisenberg is guilty of the crime charged, you must find him guilty of that charge. If on the other hand, you have a reasonable doubt as to his guilt with respect to a particular charge, you must give him the benefit of the doubt and find him not guilty of that charge.[5]

---

[5] "Firmly convinced" language adapted from Tenth Circuit Pattern Jury Instruction 1.05; Federal Judicial Center Pattern Instructions, General Criminal Instruction 21; *Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment) ("This model instruction surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly."). The Second Circuit in *United States v. Reese*, 33 F.3d 166, 172 (2d Cir. 1994), affirmed this instruction. *Reese*, however criticized as "potentially confusing" language later in the instruction stating that the jury should acquit if it found a "real possibility" that the defendant was not guilty. This instruction thus omits the "real possibility" language and adds the "hesitate to act" language endorsed by the Second Circuit in *Reese* and included in the Sand instruction.

**6.**  <u>**Number of Witnesses**</u>

The Government is not required to prove the essential elements of either offense by any particular number of witnesses. The testimony of a single witness may be sufficient to convince you beyond a reasonable doubt of the existence of the essential elements of the offense you are considering if you believe that the witness has truthfully and accurately related what they have told you. Likewise, the testimony of one hundred witnesses may be insufficient if you do not credit their testimony or otherwise find that it does not prove the elements of the charged offenses beyond a reasonable doubt. The Government must prove its case beyond a reasonable doubt regardless of the number of witnesses called.[6]

---

[6] Charge of Hon. Lewis J. Liman in *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

**7.** **<u>Direct and Circumstantial Evidence</u>**

There are two types of evidence that you may properly use in deciding whether Mr. Eisenberg is guilty or not guilty of the crimes with which he is charged.

One type of evidence is called direct evidence. Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses. The second type of evidence is circumstantial evidence. Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

There is a simple example of circumstantial evidence that is often used in this courthouse. Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside. Also assume that the courtroom shades were drawn, and you could not look outside. Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping wet.

Now, because you could not look outside the courtroom and you could not see whether it was raining, you would have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of your reason, experience, and common sense from one established fact the existence or the nonexistence of someother fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.

Many material facts, such as a person's state of mind, are not easily proven by direct evidence. Usually, such facts are established by circumstantial evidence and the reasonable inferences you draw. Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence. The law simply requires that before convicting a defendant, you must be satisfied of Mr. Eisenberg's guilt beyond a reasonable doubt, based on all of the evidence in the case.[7]

---

[7] Charge of Hon. Lewis J. Liman in *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

## 8. **Inferences**

During the trial you may have heard the parties use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that you know exists.

There are times when different inferences may be drawn from facts, whether proven by direct or circumstantial evidence. The Government asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences youwill draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense.

So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.[8]

---

[8] *Id.*

**9.  Stipulations (If applicable)**

       In this case you have heard evidence in the form of stipulations of fact and testimony. A stipulation of fact is an agreement between the parties that a certain fact or set of facts are true, and you must regard such agreed facts as true. It is for you to determine the effect or weight to give those agreed-upon facts.  A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given the testimony. However, it is for you to determine the effect or weight to give that testimony.[9]

---

[9] *Id.*

## 10. **<u>Limiting Instructions (if applicable)</u>**

If certain testimony or evidence was received for a limited purpose, you must follow the limiting instructions I have given and use the evidence only for the permissible limited purpose I indicated.[10]

---

[10] *Id.*

**11. <u>No Outside Communications, Outside Research, or Internet Research</u>**

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  As I told you at the beginning of this case, you must not conduct any independent research about this case, the matters in this case, and the parties involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, social media outlets, or use any other electronic tools to obtain information about this case or to help you decide the case.  You must not visit any location mentioned in this case for the purpose of investigating it. Please do not try to find out information from any source outside the confines of this courtroom.

You must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through email, instant messaging, text messaging, through any blog or website, through any internet chat room, or by way of any other social networking platforms, including Facebook, Twitter (or "X"), Instagram, Threads, LinkedIn, Snapchat, and YouTube.

If you become aware that any other juror is violating this instruction, you should immediately bring it to my attention through my Courtroom Deputy, but please do not make it known to any other jurors.[11]

---

[11] *Id.*

**12. <u>Improper Considerations</u>**

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.

It would be improper for you to consider, in reaching your decision as to whether the Government sustained its burden of proof, any personal feelings you may have about. Eisenberg's race, religion, national origin, sex, or age. As I have explained to you, all persons areentitled to the presumption of innocence, and the Government has the burden of proof.

It would be equally improper for you to allow any feelings you might have about the nature of the crimes charged to interfere with your decision-making process.

I also caution you that, under your oath as jurors, you cannot allow to enter into your deliberations any consideration of the punishment that may be imposed upon Mr. Eisenberg if he is convicted. The duty of imposing a sentence in the event of conviction rests exclusively with theCourt, and the issue of punishment may not affect your deliberations as to whether the Governmenthas proven his guilt beyond a reasonable doubt.

Under your oath as jurors, you are not to be swayed by sympathy. It must be clear to you that once you let fear or prejudice, or bias or sympathy interfere with your thinking there is a risk that you will not arrive at a true and just verdict.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidencein the case. If you have a reasonable doubt as to Mr. Eisenberg's guilt, you should not hesitate for any reason to return a verdict of not guilty. But, on the other hand, if you should find that the Government has met its burden of proving his guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to return a verdict of guilty.[12]

---

[12] Adapted from *id.* (combining instructions).

### 13. **The Indictment**

Mr. Eisenberg has been formally charged in an indictment. An indictment is not evidence. As I instructed you at the outset of this case, the indictment is a charge or accusation. It merely describes the charges made against a defendant. An indictment is a formal method of bringing a case into court for trial and determination by a jury.  It creates no presumption that a crime was committed, and no inference of any kind may be drawn from the fact that Mr. Eisenberg is charged by an indictment. You may not consider an indictment as any evidence of his guilt. The fact that he is the subject of this Indictment and is on trial here may not be used against him in anyway whatsoever.

Before you begin your deliberations, you will be provided with a copy of the Indictment. I will not read the entire Indictment to you at this time.  Rather, I will first summarize the offenses charged in the Indictment and then explain in detail the elements of each of the offenses.[13]

---

[13] *Id.* Mr. Eisenberg reserves the right to object to the jury receiving a copy of the Indictment in whole or in part, and the submission of this instruction is not intended to waive any such objection.

**14. <u>Summary of the Indictment</u>**

The Indictment contains three counts. Each count charges a separate offense or crime. You must, therefore, consider each count separately and you must return a separate verdict on each count.

Count One charges Mr. Eisenberg with commodities fraud by alleging that he purchased MNGO Perpetuals on the cryptocurrency exchange Mango Markets in two separate accounts that did not appear to the public to be controlled by him and then making a series of large purchases of MNGO using another token, USDC, to fraudulently increase the price of MNGO relative to USDC and, in turn, the price of the MNGO Perpetuals, which then purportedly allowed him to use the price hike to borrow and withdraw approximately $110 million worth of crypto from Mango Markets with no intention to repay those funds.

Count Two charges Mr. Eisenberg with commodities manipulation through the same alleged scheme to artificially increase the price of the MNGO Perpetuals relative to USDC.

Count Three charges Mr. Eisenberg with wire fraud through the same alleged scheme to fraudulently increase the price of MNGO relative to USDC and, in turn, the price of the MNGO Perpetuals, which then purportedly allowed him to use the price hike to borrow and withdraw approximately $110 million worth of crypto from Mango Markets with no intention to repay those funds.[14]

---

[14] *Id.*

**15. <u>Theory of the Defense</u>**

[TO BE INCLUDED AT TRIAL]

**16. <u>Count One – Commodities Fraud</u>**

Count One charges Mr. Eisenberg with committing commodities fraud. The Indictment alleges that he fraudulently obtained approximately $110 million worth of cryptocurrency from Mango Markets.[15] Count One further alleges that, in or about October 2022, Mr. Eisenberg engaged in a manipulative and deceptive scheme involving: (1) the intentional and artificial manipulation of the relative value of MNGO and USDC and of the price of MNGO Perpetuals; (2) trading with himself to create artificial MNGO Perpetual positions on Mango Markets; (3) misrepresenting his intentions to repay borrowed cryptocurrency from Mango Markets; and (4) using false personal identifying and location information in furtherance of his scheme.[16]

To meet its burden of proof with respect to Count One, the Government must prove each of the following four elements beyond a reasonable doubt:

First, Mr. Eisenberg knowingly employed any device, scheme, or artifice to defraud; and

Second, the scheme to defraud involved a materially false or fraudulent pretense, representation, promise, or omission, and

Third, Mr. Eisenberg did so knowingly and willfully and with the specific intent to defraud; and

Fourth, the scheme to defraud was in connection with a swap or a contract of sale of a commodity.

---

[15] *Phillips* at 11, modified; Indictment ("Ind."), Dkt. 4, ¶ 1.

[16] Ind. ¶ 23. As explained in the Motion to Dismiss ("MTD"), the defense submits that the indictment's allegations that Mr. Eisenberg "misrepresent[ed] his intentions to borrow cryptocurrency from Mango Markets and "us[ed] false personal identifying and location information in furtherance of the scheme" are not actionable misrepresentations or omissions here for the factual and legal reasons explained in the MTD. *See* MTD, Dkt. 28 at 24-26, MTD Reply, Dkt. 37 at 17-18.

If you find that the Government has proven all of these elements beyond a reasonable doubt, then you should find Mr. Eisenberg guilty of Count One.

If, on the other hand, you find that the Government has failed to prove any one (or more) of these elements beyond a reasonable doubt, then you should acquit Mr. Eisenberg as to Count One.[17]

---

[17] There are no form instructions for alleged violations of the Commodities Exchange Act. The instructions for Count One are adapted unless otherwise indicated from the Sand Securities Fraud instructions, 3 *Modern Federal Jury Instructions-Criminal* P 57.03 (Securities Exchange Act Securities Fraud (15 U.S.C. § 78j(b)) (2023) and supplemented by the Jury Charge recently submitted in *United States v. Phillips*, No. 1:22-cr-00138-LJL (S.D.N.Y. Oct. 24, 2023) ("*Phillips*").

**17. <u>Count One – Commodities Fraud: First Element: Fraudulent Act</u>**

The first element that the Government must prove beyond a reasonable doubt is that Mr. Eisenberg: (1) employed a manipulative device, scheme, or artifice to defraud; (2) made an untrue statement of a material fact or omitted to state a material fact that made what was said, under the circumstances, misleading; or (3) engaging in an act, practice, or course of business that would operate as a deceit upon another person.[18]

A device, scheme or artifice is a plan for the accomplishment of any objective. A scheme to defraud is any plan, device or course of action, and may involve false or fraudulent pretenses, untrue statements of material facts, omissions of material facts, representations, promises and patterns of conduct calculated to deceive.

In considering whether the Government has proven a scheme to defraud, the Government must prove beyond a reasonable doubt one or more of the false or fraudulent pretenses, representations, or promises charged in the part of the Indictment describing the scheme. In this case, the Government has alleged the following deceptions by Mr. Eisenberg: (1) the intentional manipulation of the relative value of USDC and MNGO and the price of MNGO Perpetuals; (2) trading with himself to create artificial MNGO Perpetual positions on Mango Markets; (3) misrepresenting his intention not to repay borrowed cryptocurrency from Mango Markets; and (4) using false personal identifying and location information in furtherance of his scheme.

---

[18] Adapted from 3 *Modern Federal Jury Instructions-Criminal* P 57.03 (Securities Exchange Act Securities Fraud (15 U.S.C. § 78j(b)) (2023), unless otherwise stated.

I will discuss the legal definition of price manipulation, the first of these alleged deceptions, in greater detail shortly in relation to Count Two. With respect to the third misrepresentation,

These deceptions are simply allegations, unless and until you, the jury, find them proven beyond a reasonable doubt. While the Government is not required to prove all of these deceptive acts, to find that the Government has proven this element, you must agree unanimously and beyond a reasonable doubt on which particular false or fraudulent pretense, representation, promise or omission Mr. Eisenberg made.[19] Should you deem that the deception is an omission, you must also determine that Mr. Eisenberg made partial or ambiguous statements that required further disclosure in order to avoid being misleading.[20]

If there are two purposes for a transaction, one of which is legitimate, and if the transaction would have been done at the same time and in the same manner for the legitimate purpose, it is not manipulative even if Mr. Eisenberg also had an intent to deceive or to send a false price signal into the market. On the other hand, if the transaction would not have been done at the same time and in the same manner, except for an intent to mislead, the transaction is manipulative.[21]

[(If applicable) You have heard evidence that Mr. Eisenberg's trading activity violated the rules or terms of service of certain cryptocurrency exchanges. Evidence that Mr. Eisenberg

---

[19] *United States v. Smith*, 19 Cr. 669, Dkt. 654 at 39 (N.D. Ill. Jul. 27, 2022).
[20] *United States v. Autori*, 212 F.3d 105, (2d Cir. 2000) ("A duty to disclose can [] arise in a situation where a defendant makes a partial or ambiguous statements that require further disclosure in order to avoid being misleading.").
[21] *Phillips* at 15 (verbatim).

violated an exchange rule or company policy is not sufficient, in and of itself, to find him guilty of commodities fraud or any of the other charged counts.][22]

If you find that the government has failed to establish this element, you should acquit as to Count One. If, however, you find the Government has established beyond a reasonable doubt that there was a scheme to defraud, you must next determine whether the Government has proven beyond a reasonable doubt that the fact misstated or omitted was material under the circumstances.

---

[22] *United States v. Bases*, 18 Cr. 48, Dkt. 623 at 37 (N.D. Ill. Aug. 2, 2021).

**18. <u>Count One – Commodities Fraud: Second Element: Materiality</u>**

The second element the Government must prove beyond a reasonable doubt is that the misrepresentation proved by the Government, if any, was material. A material fact is one that would have been significant to a reasonable investor's investment decision. While the Government is not required to prove that any alleged victim relied on the falsehood to make any particular investment decision, the Government must prove that the falsehood could have impacted their actions or decisions and had a natural tendency to do so.[23]

Relevance and materiality are not synonymous. The burden is on the Government to show that a given misstatement or omission would not only have been relevant but also that it was capable of influencing a decision or action that a proven victim could have made. If you find that discretion of that victim was limited, including by contract, or that it otherwise could not act upon a given misrepresentation, then that misrepresentation is immaterial and cannot form the basis for the government satisfying this element.[24] Likewise, the deceit must affect the very nature of the bargain itself, such as by creating a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver.[25]

---

[23] *See id.*

[24] *Unites States v. Litvak*, 808 F.3d 160 (2d Cir. 2015); *see also United States v. Rigas*, 490 F.3d 208 (2d Cir. 2007).

[25] *United States v. Binday*, 804 F.3d 558, 568 (2d Cir. 2015) ("[T]he deceit must affect the very nature of the bargain itself, such as by creating a discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver.") (citation omitted); *see also United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1179 (2d Cir. 1970).

If you find that the Government has satisfied this element beyond a reasonable doubt, you should next consider the second element below. If, on the other hand, you find that the Government has not met its burden, you should acquit Mr. Eisenberg as to Count One.

19. **Count One – Commodities Fraud: Third Element: State of Mind**[26]

The third element that the Government must establish beyond a reasonable doubt is that Mr. Eisenberg participated in the scheme to defraud knowingly, willfully and with intent to defraud.

To act "knowingly" means to act voluntarily and deliberately, rather than mistakenly or inadvertently.

To act "willfully" means to act with bad purpose, and with knowledge that his conduct was unlawful.[27] The Government must prove that Mr. Eisenberg acted with the intent to do something the law forbids, that is to say, with bad purpose either to disobey or to disregard the law.

To act with "intent to defraud" means to act knowingly and with an intent to deceive. Here, it is not sufficient that Mr. Eisenberg knew the alleged scheme would affect the market price of MNGO Perpetuals or contracts of sale of USDC; instead, he must have engaged in the alleged scheme for the purpose of defrauding other investors in the MNGO Perpetuals or USDC contracts markets.[28]

A defendant does not act willfully or with intent to defraud if he honestly believes that his actions were proper. Consequently, a defendant's good faith is a complete defense to the charge.

---

[26] 3 *Modern Federal Jury Instructions-Criminal* P 57.03 (Securities Exchange Act Securities Fraud (15 U.S.C. § 78j(b)) (2023)

[27] 1 *Modern Federal Jury Instructions-Criminal* P 3A.03 (2023); *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023) ("When used in the criminal context, a willful act is one undertaken with a bad purpose. In other words, in order to establish a willful violation of this statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (cleaned up)).

[28] *Phillips* at 17, modified.

The law is not violated if a defendant held an honest belief that his acts were proper.[29]  That defendant has no burden to establish good faith. The burden is on the Government to prove fraudulent intent and thus a lack of good faith beyond a reasonable doubt.

However, an honest belief on the part of Mr. Eisenberg that ultimately everything would work out would not necessarily mean he acted in good faith. If Mr. Eisenberg knowingly and willfully participated in the scheme with intent to deceive, an honest belief that others ultimately would not be harmed will not excuse his conduct.

Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown that a person wrote or stated that he committed an act with fraudulent intent. Such direct proof is not required. Instead, the ultimate facts of knowledge and intent, though subjective, may be established by circumstantial evidence, based upon a person's words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them. As I instructed you earlier, circumstantial evidence, if believed, is of no less value than direct evidence.[30]

To conclude on this element, if you find that Mr. Eisenberg lacked the intent to deceive, you should acquit him. On the other hand, if you find that the Government has established beyond a reasonable doubt not only the first two elements, namely, the existence of a scheme to defraud and materiality, but also the third element, that Mr. Eisenberg acted with the requisite state of mind, then you should next consider the fourth element below.

---

[29] *United States v. Afriyie*, 929 F.3d 63, 68 (2d Cir. 2019) ("[T]he law is not violated if the defendant held an honest belief that his acts were proper and not [in] furtherance of any unlawful scheme.  A person who acts on a belief or reason honestly held that turns out to be wrong is not punishable under these statutes.") (second alteration in original).

[30] *Phillips* at 17 (modified to delete "You may also infer, but are not required to infer, that people intend the natural and probable consequences of their actions" which is confusing, unsourced, and inapposite on the facts of this case.)

20. <u>**Count One – Commodities Fraud: Fourth Element: In Connection With A Swap or Contract of Sale of A Commodity**</u>

The fourth element of commodities fraud is that Mr. Eisenberg committed the alleged scheme in connection with a "swap" or a "contract of sale" of a commodity. Initially you must determine whether the Government has proven beyond a reasonable doubt that the scheme it alleges involved either a swap or a contract for sale of a commodity. I will discuss each of these in turn. Turning to the Government swap theory, it alleges that MNGO Perpetuals were a swap. For purposes here, the term "swap" means an agreement between parties that provides for payment based on the occurrence, or non-occurrence, of a financially consequential event.[31]

It is not sufficient if you find that Eisenberg engaged in a manipulative scheme in the MNGO spot market. You must also find that such scheme was in connection with a swap. Furthermore, for purposes of this case, there are three exceptions to the definition of swap, that cannot satisfy this element. The first is a security-based swap that is based exclusively on the price of a single security.[32] Here, a security means any investment contract in a governance token.[33] An "investment contract," in turn, involves an investment of money in a common enterprise with profits to come solely from the efforts of others, regardless of whether the enterprise is speculative, or whether there is a sale of property with intrinsic value.[34] The

---

[31] 7 U.S.C. § 1a(47)(A) ("In general . . . the term 'swap' means any agreement, contract, or transaction . . . (ii) that provides for any purchase, sale, payment, or delivery (other than a dividend on an equity security) that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence.")

[32] 7 U.S.C. § 1a(47)(A)(x) (excepting security-based swaps that do not qualify as mixed swaps).

[33] 15 U.S.C. § 77(b)(1) ("The term "security" means any . . . participation in any . . . investment contract. . . .").

[34] *SEC v. W.J Howey Co.*, 328 U.S. 293, 328 (1946).

second exception relates to retail commodity transactions, which for purposes of this case are offers to sell commodities on a leveraged basis to individuals with under $5 million in discretionary investments.[35] The third exception involves assets that involve no transfer to a counterparty of a financial risk of a future change in the value of an underlying asset.[36]

Alternatively, the Government alleges that Mr. Eisenberg participated in a scheme that was done in connection with a contract of sale for a commodity, namely USDC. The term "contract of sale" means an agreement between a buyer and a seller to transfer something at a set price. The term commodity here means any good or article which has a futures market, in other words, contractual agreements to buy or sell a specific asset at a future date for a set price.[37] Under this theory, the Government must thus prove beyond a reasonable doubt that USDC had a futures market at the time at issue (October 11, 2022) and was thus a commodity and that Mr. Eisenberg engaged in a scheme in connection with agreements to transfer USDC (and not merely MNGO) at a set price.

A scheme is "in connection with" a swap or contract of sale if it has some meaningful relationship to or coincides with a swap or contract of sale, or if the scheme's accomplishment necessarily involves a swap or contract of sale. However, the "in connection with" requirement is not so broad as to convert every instance of fraud that is incidentally related to a swap into a

---

[35] *CFTC v. Yorkshire Grp., Inc.*, 2016 U.S. Dist. Lexis 111913, at *9-10 (S.D.N.Y. Aug. 19, 2016) (citing 7 U.S.C. § 2(c)(2)(D)(i)).
[36] *SEC v. Terraform Labs Pte, Ltd.*, 2023 U.S. Dist. LEXIS 230518, at *56 (S.D.N.Y. Dec. 28, 2023) (citing 7 U.S.C. § 1a(47)(A)(iii)).
[37] 7 U.S.C. § 1a(9) (definition of commodity including a series of specific agricultural products as well as "all other goods and articles . . . and all services rights and interests . . . in which contracts for future delivery are presently or in the future dealt in").

violation of the commodities laws.[38] Rather, the Government must prove that the alleged fraud rested on the purchase or sale of a swap or of a commodity.[39] In other words, the deception must relate to the value of the pledged swap or commodity itself and not some other asset or issue.[40]

If you determine that the Government has failed to prove that the scheme to defraud involved either a swap or a contract of sale of a commodity, you should acquit Mr. Eisenberg as to Count One. If, however, you determine that the Government has proven this element and elements one through three beyond a reasonable doubt, you should convict as to Count One.

---

[38] *See Chemical Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 944 (2d Cir. 1984) ("[I]t is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part.").

[39] *D'Addario v. Platt*, 75 F.4th 86, 96 (2d Cir. 2023) (citing *Romano v. Kazacos*, 609 F.3d 512, 522 (2d Cir. 2010)).

[40] *Chemical Bank*, 726 F.2d at 944.

**21. <u>Count Two – Commodities Manipulation – the Nature and Elements of the Offense</u>**

Count Two (commodities manipulation) charges Mr. Eisenberg with committing commodities manipulation. Count Two charges that, in or about October 2022, Mr. Eisenberg engaged in a scheme involving the intentional and artificial manipulation of the market price of MNGO Perpetuals on Mango Markets.[41] (Unlike Count One, Count Two does not involve any allegation regarding contracts of sale of USDC).

To meet its burden of proof with respect to Count Two, the Government must prove each of the following four elements beyond a reasonable doubt:[42]

First, that MNGO Perpetuals are "swaps" and that Mr. Eisenberg possessed the ability to influence their market price;

Second, that the market price of the MNGO Perpetuals was artificial;

Third, that Mr. Eisenberg caused the artificial price; and

Fourth, that Mr. Eisenberg specifically intended to cause the MNGO Perpetuals' artificial market price.

---

[41] *Phillips* at 13, modified; Ind. at ¶ 25.

[42] *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013) ("[A] court will find manipulation where (1) Defendants possessed an ability to influence market prices; (2) an artificial price existed; (3) Defendants caused the artificial prices; and (4) Defendants specifically intended to cause the artificial price."); *see also CFTC v. Gorman*, 2023 WL 2632111, at *6 (S.D.N.Y. Mar. 24, 2023); *United States v. Radley*, 659 F. Supp. 2d 803, 813 (S.D. Tex. 2009); *Reliant Energy Servs., Inc.*, 420 F. Supp. 2d at 1056.

22. **Count Two – Commodities Manipulation: Element One: Ability to Alter Price of a Swap**

The Government alleges Mr. Eisenberg manipulated the price of a swap, namely, the market price of MNGO Perpetuals.

I have previously instructed you on the definition of "swap" and you should initially determine, as you did in relation to Count One, whether the Government has proven beyond a reasonable doubt that the MNGO Perpetuals are swaps.

With respect to the first element, you must find that Mr. Eisenberg, through his conduct, had the ability to intentionally alter, change, or influence the price of the perpetual futures contracts on Mango Markets. The ability to influence prices can be evaluated by determining whether Mr. Eisenberg held a dominant market position and whether such a market position would allow him to affect the price of MNGO Perpetuals.[43]

If you find that the Government has satisfied this element beyond a reasonable doubt, you should next consider the second element below. If, on the other hand, you find that the Government has not met its burden, either as to MNGO Perpetuals being a swap or as to Mr. Eisenberg having the ability to alter MNGO Perpetual prices, you should acquit as to Count Two.

---

[43] *See CFTC v. Parnon Energy, Inc.*, 875 F. Supp. 2d 233, 245 (S.D.N.Y. 2012) (explaining that a "controlling [] position in the market" can establish "the requisite ability to direct the market price" (internal citation omitted)).

**23. <u>Count Two – Commodities Manipulation: Elements Two and Three: Artificiality</u>**

With respect to the second and third elements, you must determine whether the Government has proven that the market price of MNGO Perpetuals was artificial and, if so, whether Mr. Eisenberg caused that artificial price.

While there is no universally accepted measure or test of price artificiality,[44] generally, a price is artificial if it was caused by some mechanism other than the basic forces of supply and demand, meaning a price that sends a false signal to the market.[45] A price is not artificial merely because it has been affected by a market participant's trading – even a large market participant – because price movements are expected to be affected by orders and trades in the marketplace.[46] A price cannot be artificially affected if a transaction's terms are fully disclosed.[47] The question is whether the Government has proven beyond a reasonable doubt that the price of MNGO Perpetuals was caused by illegitimate forces, such as making false or misleading statements into the market[48] or by actions taken by Mr. Eisenberg that otherwise distorted estimates of the

---

[44] *In re Soybean Futures Lit.*, 892 F. Supp. 1025, 1057 (N.D. Ill. 1995).

[45] *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100 (2d Cir. 2007) ("In identifying activity that is outside the 'natural interplay of supply and demand,' courts generally ask whether a transaction sends a false pricing signal to the market."); *CFTC v. Parnon Energy Inc.*, 875 F. Supp. 2d 233, 245 (S.D.N.Y. 2012) ("An artificial price is a price that 'does not reflect basic forces of supply and demand.'") (citing *In re Soybean Futures Lit.*, 892 F. Supp. 1025, 1044 (N.D. Ill. 1995).

[46] *See Radley*, 659 F. Supp. 2d at 816 ("Large market participants . . . are market participants nonetheless. Their individual supply and demand are part of the aggregate, and it is axiomatic that their actions will affect the price of a commodity. Acting in a manner that shifts the price of a commodity in a favorable direction is the business of profit-making enterprises, and if it is done without fraud or misrepresentations, it does not clearly violate the CEA."); *c.f. Parnon Energy, Inc.*, 875 F. Supp. 2d at 246 (market manipulation "is implicitly an artificial stimulus applied to (or at times a brake on) market prices") (cleaned up).

[47] *United States v. Eisenberg*, Dkt. 67 at 6 (quoting *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76-77 (2d Cir. 2021)).

[48] *Reliant Energy Servs., Inc.*, 420 F. Supp. 2d at 1058 ("Fraud and deceit are not legitimate market forces."); *Cargill, Inc. v. Hardin*, 452 F.2d 1154, 1163 (8th Cir. 1971) ("[O]ne of the most common manipulative devices [is] the floating of false rumors which affect futures prices .

underlying economic value of the MNGO Perpetuals.[49]  If you find that the Government has satisfied these elements beyond a reasonable doubt, you should next consider the fourth element below. If, on the other hand, you find that the Government has not met its burden, you should acquit as to Count Two.[50]

. . .”); *c.f. Radley*, 659 F. Supp. 2d at 816 (“Since defendants have not been accused of making false or misleading statements, the effect of their actions on the market was part of the legitimate forces of supply and demand.”).

[49] *United States v. Eisenberg*, Dkt. 67 at 6 (quoting *Set Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 76 (2d Cir. 2021)).

[50] The government’s repeated attempts “to read out the artificial price element of the *Amaranth* test by collapsing it into the subjective intent requirement” have been explicitly rejected. *CFTC v. Wilson*, No. 13 Civ. 7884 (RJS), 2018 U.S. Dist. LEXIS 207376 (S.D.N.Y. Nov. 30, 2018) (“Unable to prove that the settlement prices were actually inflated or above fair market value, the CFTC resorts to a tautological fallback argument that endeavors to conflate artificial prices with the mere intent to affect prices.”).

### 24. __Count Two – Commodities Manipulation: Element Four: Specific Intent__

For the fourth element, the Government must prove beyond a reasonable doubt that Mr. Eisenberg specifically intended to cause the MNGO Perpetuals to have an artificial market price. It is not enough that the Government show that Mr. Eisenberg entered into a transaction to move the MNGO spot price knowing it would have the effect of changing the price of the MNGO Perpetual.[51] Rather, the Government must prove that Mr. Eisenberg's purpose or conscious object was to create an artificial market price for the MNGO Perpetuals.[52]

If, however, you find that the Government has proven all four elements beyond a reasonable doubt, you should convict as to Count Two.

---

[51] *See In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 539 (S.D.N.Y. 2008) ("[E]ntering into a legitimate transaction knowing that it will distort the market is not manipulation—only intent, not knowledge, can transform a legitimate transaction into manipulation"), *aff'd*, 730 F.3d 170 (2d Cir. 2013).

[52] *United States v. Smith*, 19 Cr. 669, Dkt. 654 at 39 (N.D. Ill. Jul. 27, 2022).

**25. <u>Count Three – Wire Fraud</u>**

Count Three (Wire Fraud) of the Indictment charges that Mr. Eisenberg devised a scheme to defraud (*e.g.,* by means of false representations) and in furtherance of that scheme knowingly caused the interstate wires to be used.[53]

The Indictment alleges, in relevant part, that Mr. Eisenberg engaged in a manipulative and deceptive scheme involving the intentional and artificial manipulation of the relative value of USDC and MNGO and the price of perpetual futures contracts on Mango Markets; trading with himself to create artificial perpetual futures contracts positions on Mango Markets; misrepresenting his intentions to borrow cryptocurrency from Mango Markets; and using false personal identifying and location information in furtherance of his scheme, and sent and caused to be sent wires in furtherance of the scheme.

In order to sustain this charge, the Government must prove each of the following elements beyond a reasonable doubt:[54]

First, that Mr. Eisenberg employed a device, scheme or artifice to defraud to obtain money or property;

Second, the scheme to defraud involved a materially false or fraudulent pretense, representations, promises or omission; and

Third, that Mr. Eisenberg knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud.

Fourth, that in execution of that scheme, Mr. Eisenberg used or caused the use of interstate wires as specified in the Indictment.

---

[53] 2 *Modern Federal Jury Instructions-Criminal* P 44.01 Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343) (2023)
[54] *Id.* at 44-3.

If you find from your consideration of all the evidence that the Government has proved each of these elements beyond a reasonable doubt as to Mr. Eisenberg, then you should find him guilty as to this count.

If, on the other hand, you find from your consideration of all the evidence that the Government has failed to prove any one of these elements beyond a reasonable, then you should find Mr. Eisenberg not guilty of Count Three.

**26.** **Count Three – Wire Fraud: Elements One Through Three: Scheme or Artifice to Defraud, Materiality, State of Mind**

The first element that the Government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud of money or property by means of false or fraudulent pretenses, representations, or promises. In regard to Count One, I previously instructed you on the definition of "scheme to defraud," and both the definition of and specific allegations in the Indictment regarding false or fraudulent pretenses, representations, or promises. You should apply those definitions here.

Similarly, in regard to Count One, I previously instructed you regarding the second element, materiality, and you should use that instruction to determine whether the Government has proven materiality beyond a reasonable doubt as to wire fraud.

The third element of wire fraud that the Government must prove is that Mr. Eisenberg participated in the scheme to defraud knowingly, willfully and with specific intent to defraud. As with the elements above, I have previously instructed you relating to these concepts in regard to Count One, and I instruct you to refer to those definitions and instructions for purposes of determining whether the Government has met its burden on the third element of Count Three.

If you find that the Government has satisfied these three elements beyond a reasonable doubt, you should next consider the fourth element below. If, on the other hand, you find that the Government has not met its burden on any one of these elements, you should acquit Mr. Eisenberg as to Count Three.[55]

---

[55] 2 *Modern Federal Jury Instructions-Criminal* P 44.01 Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343) (2023), Instruction 44-4.

**27. <u>Count Three – Wire Fraud: Elements Four: Use of the Wires</u>**

The fourth and final element that the Government must establish beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of the scheme to defraud.

The wire communication must pass between two or more states as, for example, a telephone call between New York and New Jersey; or it must pass between the United States and a foreign country, such as a telephone call between New York and London. (If applicable: A wire communication also includes a wire transfer of funds between banks in different states or between a bank in the United States and a bank in a foreign country.)

The use of the wires need not itself be a fraudulent representation. It must, however, further or assist in the carrying out of the scheme to defraud.

It is not necessary for Mr. Eisenberg to be directly or personally involved in the wire communication, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which Mr. Eisenberg is accused of participating.

In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that Mr. Eisenberg caused the wires to be used by others. This does not mean that Mr. Eisenberg must specifically have authorized others to make the call (or transfer the funds). When one does an act with knowledge that the use of the wires will follow in the ordinary course of business or where such use of the wires can reasonably be foreseen, even though not actually intended, then he causes the wires to be used. (If applicable: The Government contends that it was reasonably foreseeable that the wires would be used in the ordinary course of business (*e.g.,* to transfer the funds between banks,) and therefore that Mr. Eisenberg caused the use of the wires.)

With respect to the use of the wires, the Government must establish beyond a reasonable doubt the particular use charged in the Indictment. However, the Government does not have to prove that the wires were used on the exact date charged in the Indictment. It is sufficient if the evidence establishes beyond a reasonable doubt that the wires were used on a date substantially similar to the dates charged in the Indictment.[56]

---

[56] *Id.*

## 28. <u>**Relationship to the United States**</u>

The Government must also prove beyond a reasonable doubt that the charged offenses had a sufficient relationship to the United States. The Government may satisfy its burden to show a sufficient relationship to the United States in one of two ways: The Government can prove that the conduct relevant to the offenses occurred in the United States, or the Government can prove that an activity related to the trading had a direct and significant connection with activities in commerce of the United States.

First, the Government can meet its burden by proving that the relevant conduct occurred in the United States. Relevant conduct means the trading on Mango Markets or in the Mango spot markets. For conduct to be considered relevant, it must be relevant to the focus of the charged counts. The focus of the commodities fraud and manipulation statutes is rooting out manipulation and ensuring integrity in swaps markets. For conduct to be relevant to that focus, it is not sufficient that the conduct is a necessary characteristic of the scheme or that it has an effect in the United States. Rather, criminal liability must be premised on the conduct that occurred in the United States. The relevant conduct in the United States must be essential, rather than merely incidental, to the charged scheme. Put differently, the relevant conduct in the United States must have primacy. Whether trading has taken place in the United States depends on where buy orders and sells orders are matched; in other words, where the server is located on which the matching takes place.[57] This is true even if one or both of the parties to a trade is in the United States at the time of the trading, if the trade takes place on a foreign exchange that matches the orders abroad, that is conduct that took place outside of the United States.

---

[57] *Myun-Uk Choi v. Tower Research Capital LLC*, 890 F.3d 60, 67 (2d Cir. 2018).

Second, the Government can meet its burden by proving that an activity of Mr. Eisenberg or his co-conspirators outside the United States related to the trading on Mango Markets had a direct and significant connection with activities in commerce of the United States. For a connection to be "direct," it must be immediate. A connection to an activity in commerce of the United States is direct if the activity outside the United States directly and immediately affected activity in commerce of the United States, without deviation or interruption. An indirect, remote, or attenuated connection to commercial activity that occurs in the United States is not sufficient to satisfy this element of the test. Significant in this context means meaningful or consequential. For activity outside the United States to have a significant connection with activity in commerce of the United States, the relationship between the activity outside the United States to the commercial activity in the United States must be of importance. It is not sufficient if the relationship between the conduct outside the United States and that inside the United States is random, fortuitous, attenuated, or merely incidental. The conduct in the United States must be integral, rather than ancillary.[58]

---

[58] Adapted from *Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

**29. <u>Venue</u>**

With respect any given count you are considering, the Government, in addition to proving the essential elements of that charge, must also prove that at least one act in furtherance of the charge occurred in the Southern District of New York and that it was foreseeable that such an act would occur in the district.[59] This is called establishing venue. The Southern District of New York includes all of Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange and Sullivan Counties. The Government does not have to prove that a completed crime was committed within the Southern District of New York, or that any defendant was ever in the Southern District of New York during the commission of the crime. It is sufficient to satisfy the venue requirement if any act in furtherance of the crime charged occurred in this District. The act itself may not be a criminal act. And the act need not have been taken by Mr. Eisenberg, so long as the act was part of the crime that you find Mr. Eisenberg committed.

Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the Government is only required to prove venue by a preponderance of the evidence. A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this District.[60]  Again, it is essentially important to remember that all other elements of the crimes charged against Mr. Eisenberg must be proven beyond a reasonable doubt by the Government.

---

[59] *United States v. Svoboda*, 347 F.3d 471, 483 (2d Cir. 2003).
[60] Adapted from the charge of the Hon. Colleen McMahon in *United States v. Omar Gonzalez*, 10 Cr. 588 (S.D.N.Y. 2010), and from Sand, *Modern Federal Jury Instructions*, Instr. 3-11.

**30. <u>Variance in Dates and Times</u>**

You will note that the Indictment alleges that certain acts occurred on or about various dates. It does not matter if the evidence you heard at trial indicates that a particular act occurred on a different date. The law requires only a substantial similarity between the dates alleged in the Indictment and the dates established by the evidence.[61]

---

[61] Adapted from the charges of the Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC), Dkt. 308, 1183 (S.D.N.Y. 2021); Hon. Edward Weinfeld in *United States v. Della Rocca*, 72 Cr. 217 (S.D.N.Y. 1972), and from the charges of the Hon. Charles Metzner in *United States v. Koss*, *aff'd*, 506 F.2d 1103 (2d Cir. 1974), cert. denied, 420 U.S. 977 (1975).

**31. <u>Multiple Counts</u>**

You must return a separate verdict of guilty or not guilty for each count charged. Whether you find Mr. Eisenberg guilty or not guilty as to one offense should not affect your verdict as to any other offense. You must analyze and evaluate the evidence separately as to each count.[62]

---

[62] *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

## 32. __Credibility of Witnesses__

You have had the opportunity to observe the witnesses. It is now your job to decide how believable or credible each witness was in his or her testimony. You are the sole judges of the credibility of each witness and of the importance of his or her testimony. How do you judge the credibility of witnesses? There is no magic formula.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in light of all other testimony and evidence, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given and all of the other evidence in the case. You should use your common sense, your good judgment, and your everyday experiences in life to make credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in this case. A witness may

be inaccurate, contradictory, or even untruthful in some aspects, and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: did the witness tell the truth before you? It is for you to say whether his or her testimony at trial is truthful in whole or in part.

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

You have heard evidence during the trial that witnesses had discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there

is nothing either unusual or improper about a witness meeting with lawyers before testifying, so that the witness can be made aware of the subjects that he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. In fact, it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

You have heard the testimony of a law enforcement official. The fact that a witness may be employed as a law enforcement official does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness. In this context, Mr. Eisenberg is allowed to try to attack the credibility of such a witness on the ground that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, if any, you find it deserves.

The fact that one party called more witnesses and introduced more evidence than the other does not mean that you should necessarily find the facts in favor of the side offering the most witnesses. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. You also have to decide which witnesses to believe and which facts are true. To do this you must look at all the evidence, drawing upon your own common sense and personal experience. I have just discussed the criteria for evaluating credibility; keep in mind that the burden of proof is always on the

Government and Mr. Eisenberg is not required to call any witnesses or offer any evidence, since he is presumed to be innocent.[63]

---

[63] *United States v. Phillips*, 22 Cr. 138 (LJL) (Oct. 2023).

### 33. <u>Particular Investigative Techniques Not Requires</u>

You have heard references in the arguments in this case to the fact that certain investigative techniques were used by the Government and that certain others were not used. There is no legal requirement that the Government use any specific investigative techniques to prove its case. However, you may consider these facts in deciding whether the Government has met its burden of proof, because, as I told you, you should look to all of the evidence and lack of evidence in deciding whether or not the Government has proven Mr. Eisenberg's guilt beyond a reasonable doubt.[64]

---

[64] Adapted from Jury Charge of Hon. Gregory Woods in *United States v. Chow*, 17 Cr. 667 (S.D.N.Y. 2018).

## 34. <u>**Charts and Summaries (if applicable)**</u>

The Government (or defense) has presented exhibits in the form of charts and summaries. These charts and summaries were shown to you in order to make the other evidence more meaningful and to aid you in considering the evidence. They are no better than the testimony or the documents upon which they are based, and are not themselves independent evidence. Therefore, you are to give no greater consideration to these schedules or summaries than you would give to the evidence upon which they are based.

It is for you to decide whether the charts and summaries correctly present the information contained in the testimony and in the exhibits on which they are based. To the extent that the charts conform with what you determine the underlying evidence to be, you may consider them if you find that they are of assistance to you in analyzing and understanding the evidence.[65]

---

[65] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 5-13, and the charges of the Hon. Katherine B. Forrest in *United States v. Benito Del Rosario*, 12 Cr. 81 (S.D.N.Y. 2012).

### 35. Testimony of Law Enforcement Officers

You have heard testimony of law enforcement and government officials. The fact that a witness may be employed by the Government does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness or government employee witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witnesses or government employee witnesses and to give that testimony whatever weight, if any, you find it deserves.[66]

---

[66] Adapted from Sand, *Modern Federal Jury Instructions*, Instr. 7-16.

**36. <u>Testimony of Experts</u>**

You have heard testimony from what we call [an] expert witness[es].  An expert is a witness who by education or experience has acquired learning or experience in a specialized area of knowledge. Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be an expert and give their reasons for their opinions. Expert testimony is presented to you on the theory that someone who is experienced in a specialized field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Now, your role in judging credibility applies to experts as well as to other witnesses. You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve.  If you should decide that the opinion of an expert is not based on sufficient education or experience or on sufficient data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert is outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

On the other hand, if you find that the opinion of an expert is based on sufficient data, education and experience, and the other evidence does not give you reason to doubt his conclusions, you would be justified in relying on his or her testimony.[67]

---

[67] Adapted from the charges of the Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC), Dkt. 308, 1151 (S.D.N.Y. 2021).

**37. <u>Stipulations (if applicable)</u>**

In this case, you have heard evidence in the form of stipulations of testimony. A stipulation of testimony is an agreement among the parties that, if a witness is called, the person would have given certain testimony. You must accept as true the fact that the witness would have given that testimony. However, it is for you to determine the effect to be given to that testimony.

In this case, you have also heard evidence in the form of stipulations of fact. A stipulation of fact is an agreement between the parties that a certain fact is true. You must regard such agreed upon facts as true. The weight or importance of the fact is a matter for you, the jury, to decide.[68]

---

[68] Adapted from the charges of the Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC), Dkt. 308, 1145 (S.D.N.Y. 2021); *see also* Sand, *Modern Federal Jury Instructions*, Instr. 5-6.

### 38. __Preparation of Witnesses__

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court.

You may consider that fact when you are evaluating a witness's credibility. There is nothing either unusual or improper about a witness meeting with lawyers before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.[69]

---

[69] Adapted from Adapted from Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC), Dkt. 308, 1151 (S.D.N.Y. 2021).

**39. <u>Evidence Obtained From Searches</u>**

You have heard testimony about the evidence seized in connection with certain searches conducted by law enforcement officers or otherwise obtained by law enforcement. Evidence obtained from these searches was properly admitted in this case and may be properly considered by you. Whether you approve or disapprove of how the evidence was obtained should not enter into your deliberations, because I instruct you that the Government's use of the evidence is entirely lawful. You must, therefore, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proven Mr. Eisenberg's guilt beyond a reasonable doubt.[70]

---

[70] Adapted from the charges of the Hon. P. Kevin Castel in *United States v. Fuentes Ramirez*, 15 Cr. 379 (PKC), Dkt. 308, at 1148 (S.D.N.Y. 2021); Hon. William H. Pauley III in *United States v. Meregildo*, 11 Cr. 576 (S.D.N.Y. Nov. 28, 2012).

**40. <u>Defendant's Testimony</u>**

[*Requested only if Mr. Eisenberg testifies*]

The defendant in a criminal case never has any duty to testify or come forward with any evidence. This is because, as I have told you, the burden of proof beyond a reasonable doubt remains on the Government at all times, and Mr. Eisenberg is presumed innocent. In this case, Mr. Eisenberg did testify and he was subject to cross-examination like any other witness. You should examine and evaluate the testimony just as you would the testimony of any witness with an interest in the outcome of the case.[71]

---

[71] *See United States v. Gaines*, 457 F.3d 238, 249 & n.9 (2d Cir. 2006).

**41. <u>Defendant's Right Not to Testify</u>**

[*Requested if Mr. Eisenberg does not testify*]

Mr. Eisenberg did not testify in this case. Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove Mr. Eisenberg guilty beyond a reasonable doubt. That burden remains with the Government throughout the entire trial and never shifts to the defendant. A defendant is never required to prove that he is innocent. The right of a defendant not to testify is an important part of our Constitution.  As the Supreme Court of the United States has said:

> It is not everyone who can safely venture on the witness stand though entirely innocent of the charges against him.  Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove any prejudice against him.  It is not everyone, however honest, who would therefore willingly be placed on the witness stand.[72]

Therefore, you must not attach any significance to the fact that Mr. Eisenberg did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider it in any way in your deliberations in the jury room.[73]

---

[72] Adapted from the charge given by Honorable John S. Martin in *United States v. Roy Moody*, 00 Cr. 671 (JSM).

[73] Sand, *Modern Federal Jury Instructions*, Instr. 5-21.

**CONCLUSION**

The defense respectfully requests that the Court accept the defense's proposed jury instructions.

DATED:    March 24, 2024                    Respectfully Submitted,


                                            By:*/s/ Brian E. Klein*
                                               Brian E. Klein
                                               Ashley E. Martabano
                                               Waymaker LLP

                                               -and-

                                               Sanford N. Talkin
                                               Noam B. Greenspan
                                               Talkin, Muccigrosso & Roberts, LLP

                                               *Attorneys for Avraham Eisenberg*